**In the Matter of Walfred T. JANDEL and Patricia R. Jandel, Debtors.**

**Walfred T. JANDEL and Patricia R. Jandel, Plaintiffs,**

**v.**

**PRECISION COLORS, INC., Joseph E. Lyons, Edwin Fite, Everett C. Karas, C. J. Hoying, Donald E. Hochwalt, First National Bank, Defendants.**

**Bankruptcy No. 3-80-02832.
Adv. No. 3-80-0659.**

United States Bankruptcy Court,
S. D. Ohio, W. D.

Jan. 30, 1981.

Thomas R. Noland, Dayton, Ohio, for plaintiffs.

Estabrook, Fin and McKee, John Henry, Wm. P. Smith, Dayton, Ohio, for First National Bank.

Eugene A. Jablinski, Dayton, Ohio, for David L. Penrod.

Charles W. Slicer, Dayton, Ohio, for defendants.

George W. Ledford, Englewood, Ohio, Trustee.

CHARLES A. ANDERSON, Bankruptcy Judge.

On 12 September 1980 Walfred T. Jandel and Patricia R. Jandel, husband and wife, filed a joint petition, statement, and schedules under Chapter 13. The occupation of Walfred was listed as President, Precision Colors, Inc. with income of $850.00 per week and of Patricia, as housewife. Among the assets scheduled were 113 shares of stock of Commonwealth Edison valued at $7,000.00, 20 shares of Standard Register Company in the name of Patricia valued at $600.00, 4 shares of Paraplegic Mfg. Company in the name of Patricia valued at $200.00. 300 Class A shares of Precision Colors, Inc. jointly held valued at $600,-000.00. 1300 Class B shares of Precision Colors, Inc. jointly held valued at $65,000.00 and 50,000 shares of Shiloh Chemical Corp. no value, in the name of Walfred.

On 26 September 1980 Debtors filed their Plan pursuant to 11 U.S.C. Section 1321 to pay the creditors 100% of allowed claims, at the rate of $700.00 per month for a period of 60 months or until all creditors are paid in full prior to the expiration of 60 months. The Plan also provides that, during the term of the Plan, debtors shall sell their interests in the stock of Precision Colors, Inc. to fund full payment of all secured and unsecured creditors. First National Bank of Dayton shall be first paid from the proceeds in order to release Debtors' stock from a pledge of said shares.

On 6 November 1980 Debtors as plaintiffs filed a complaint naming as defendants Precision Colors, Inc., Joseph E. Lyons, Edwin Fite, Everett C. Karas, C. J. Hoying, Donald E. Hochwalt and The First National Bank.

Among numerous allegations pleaded are averments that First National Bank was a creditor on a loan to debtors on July 21, 1980, in the amount of $38,841.40, on a promissory note due on September 19, 1980, and a claimed pledgee as collateral for said debt of 1100 shares of Precision Colors, Inc. The Bank assigned the shares of stock to the other named defendants on October 22, 1980, upon receiving payment of the note. The shares were then voted by the assignees (or nominee) at a Board of Directors meeting at which Walfred was replaced as President and employee of the corporation, rendering him thereby unemployed.

On 22 December 1980 Defendant Precision Colors, Inc. filed a motion to dismiss the Chapter 13 petition because the total amount of unsecured debts exceed the statutory limits of 11 U.S.C. § 109(e); Defendants Precision Colors, Lyons, Fite, Karas, Hoying and Hochwalt all joined in a motion to dismiss the adversarial case for want of jurisdiction over the subject matter, and to require the release of the stock, and reinstatement to employment; Defendant Bank filed a motion to dismiss the adversarial case because the assignment of the stock is not within the purview of 11 U.S.C. § 362; and Defendant Bank also filed a motion for reconsideration of an order entered 18 No-

vember 1980 joining one David L. Penrod as a party pursuant to Civil Rule 19 because of a state court judgment and order in aid of execution to First National to hold property of Walfred T. Jandel in its possession for satisfaction of the state court judgment.

This matter came before the Court on January 22, 1981 for disposition of all of the motions, listed as follows: (1) the motion of defendants Precision Colors, Inc. et al. to dismiss the debtors' Chapter 13 proceeding; (2) the motion of defendants Precision Colors, Inc. to dismiss the debtors' adversarial matter number 3–80–0659; (3) the motion of defendant First National Bank of Dayton to dismiss the same adversarial matter; (4) the motion of defendant First National Bank of Dayton for the Court to reconsider its Order of November 18, 1980 joining David L. Penrod as a party to the above adversarial matter; and (5) the motion of defendant First National Bank of Dayton to strike the Answer of David L. Penrod. The following Order is based upon the pleadings, the court record, the oral argument of counsel at the hearing of January 22, 1981, on facts assumed *arguendo*, and on the memorandum of law submitted by the parties.

The primary thrust of all of the motions pertain to the intent and purpose of Chapter 13 and the jurisdiction of the bankruptcy court relating thereto. The fundamental issues will be addressed, applicable to all motions; and each motion will then be treated briefly thereafter because of the seriousness and ramification of the issues raised for ultimate disposition on the merits, if and when maturely entertained by and presented to the Court.

The defendants seriously urge, in essence, that the Chapter 13 process does not contemplate the reorganization of a corporation or the ownership of stock and the conduct of corporate affairs, including stock voting rights, board of directors meetings, and discharge of corporate officers. Such truisms are not gainsaid as such.

The initial inquiry in this case, however, looks to the jurisdiction nexus on the date that the Chapter 13 petition was filed. It is summarily noted that the debtor was an "individual with regular income" sufficiently stable and regular to enable such individual to make payment. He was then an employee of the corporation; and, since displacement, draws unemployment compensation as an employee. 11 U.S.C. § 101(24).

Pursuant to 11 U.S.C. § 103(a), Chapter 1, Chapter 3 and Chapter 5 apply in a Chapter 13 case. Section 541 provides that all of the debtor's interest in property, legal or equitable, and wherever located, becomes property of the estate. In addition, in a Chapter 13 case, property of any kind specified in Section 541 that a debtor acquires after the commencement of the case becomes property of the estate. 11 U.S.C. § 1306(a)(1).

The filing of a Chapter 13 petition invokes the automatic stay provisions of Section 362(a). "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt to repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 340, U.S. Code Cong. & Admin.News 1978, 5963, 6296.

█ By the grant of original jurisdiction to the bankruptcy courts over all "civil proceedings" arising under Title 11 and including as well those "arising under or related to" cases under Title 11, even the closing of case does not preclude litigation on issues after the case has been closed, such as 11 U.S.C. § 524(b) dealing with postbankruptcy discrimination against the debtor.

These elementary recitations are made to obviate the fact that the jurisdiction of a bankruptcy court does encompass all of the allegations of the complaint. Jurisdiction hopping, even for ancillary conflict resolution, has been wisely rendered passé. See Anderson, "Pervasive Jurisdiction Under the Bankruptcy Reform Act of 1978", *Dayton Bar Briefs, Vol. XXVIII, No. 10, June/July 1979.*

With regard to the first motion listed above, the defendants, Precision Colors, Inc. et al., claim that the debtors' Chapter 13 proceeding should be dismissed because it does not comply with the provisions of Title 11 of the United States Code. More particularly, the defendants claim that the unsecured claims listed in the debtors' Schedules amount to $156,866.58; this, they allege, is in excess of the statutory amount of $100,000.00 prescribed in 11 U.S.C. § 109(e) which section delineates the requirements for eligibility under Chapter 13. Further, the defendants claim that although the secured claims listed amount to only $175,422.90 which is well within the statutory limit of $350,000.00, the manner in which certain items are listed as "undetermined", "contingent" and/or "unliquidated" "makes it unclear as to whether the debts are accurately listed and makes it uncertain as to whether the secured debts are under $350,000.00." The defendants also claim that the debtors list possible obligations to creditors of Shiloh Chemical Corporation for which Mr. Jandel may be personally liable. They claim that they are not able to determine whether these debts are secured, unsecured, contingent or what amount they may be. Finally, the defendants state that the unsecured debt schedule contains claims designated as "undetermined"; thus, it is not possible to determine whether the statutory limits of § 109(e) have been exceeded.

■ After an examination of the subject schedules, we find that the debtors have complied with the requirements of 11 U.S.C. § 109(e). That section limits Chapter 13 relief to debtors who owe, "on the date of the filing of the petition, *noncontingent, liquidated,* unsecured debts of less than $100,000.00 and *noncontingent, liquidated,* secured debts of less than $350,000.00." (emphasis added) According to the schedule of unsecured claims, there is a contingent claim against the debtors valued at $69,000.00 and an undetermined claim against them. This leaves noncontingent, liquidated claims of $37,866.58; thus, the § 109(e) limits are met. The defendants offered no suggestion or evidence that the debtors' schedule of secured claims and unsecured claims is incorrect.

Accordingly, as to the defendants Precision Colors, Inc.'s motion to dismiss the Chapter 13 proceeding, the Court finds the motion not well-taken and it is hereby DENIED.

■ Turning to Precision Color, Inc.'s motion to dismiss the adversarial matter, we shall treat the jurisdictional issue first. The defendants claim that this Court does not have subject matter jurisdiction over the basis of the complaint. Also, they claim there is no jurisdiction to grant the relief sought by the plaintiff. We would direct the defendants' attention to 28 U.S.C. §§ 1471 and 1481. We find that those sections of the United States Code provide this Court with all the jurisdictional powers necessary to hear the issues raised by the plaintiffs' complaint and to grant any and all of the relief sought in that complaint.

This motion (and the First National Bank of Dayton's motion to dismiss) question whether the plaintiffs state a claim upon which relief can be granted. They argue that 11 U.S.C. § 362(a) is not so broad as to proscribe the actions surrounding the assignment in question. The defendants point to a portion of the legislative history, commenting on section 362(a)(6), stating that "[c]reditors in consumer cases occasionally telephone debtors to encourage repayment in spite of bankruptcy. Inexperienced, frightened, or ill-counseled debtors may succumb to suggestions to repay notwithstanding their bankruptcy. This provision prevents evasion of the purpose of the bankruptcy laws by sophisticated creditors." This language, argue the defendants, sets forth the types of creditor actions which section 362 was designed to curtail. Further, the defendants posit that section 362 does not reach any and all actions affecting a debtor, nor does it shroud a debtor in some type of immunity from any actions against him.

Precision Colors, Inc. et al. state that the property of the debtors was not transferred but was merely assigned from one entity to another. The Bank, however, does charac-

terize the transaction as a transfer for value but claims that this can hardly be characterized as a collection of a debt. According to the defendants, the provisions of section 362(a) are not applicable to the facts before the Court.

■ We are constrained to disagree with the defendants. We find that sections 362(a)(3), (4), (5) and (6) are applicable to the events complained of by the plaintiffs. A careful reading of the above sections reveals that the actions prohibited need not be done directly against the debtor himself. For example, section 362(a)(6) does not say "any act to collect, assess, or recover *from the debtor* a claim against the debtor that arose before the commencement of the case. . . ." "Any action to collect" means any act to collect from any source whatsoever.

■ In its memorandum, the Bank uses an analogy to explain its theory. It says,

The mere transfer of an obligation, whether the obligor is in bankruptcy or not, is not a "collection". Nor is the receiving of value where that value comes from someone other than the debtor or a co-obligor. If the debtors' parents offered gratuitously to pay all debts, the mere act of acceptance by the Bank and the assignment of the Note would certainly not constitute a violation of the automatic stay. Why then is the Bank's assignment and transfer so odious.

If the hypothetical parents gratuitiously used their own funds to pay an obligation of the debtors, we would not say that the Bank should forego acceptance of the payment. However, at the moment the Bank would transfer the Note to the parents in consideration for the parents paying the obligation, the Bank would be in the same posture as it is under the present situation. The crux of this transaction is not the Bank's acceptance of payment from a third party in satisfaction of the debtors' obligation to the Bank; the crux is that the Bank, in exchange for, presumably, a cash settlement of its claim, transferred to the third party property which was undisputedly owned by the debtors on the date they filed their petition with this Court. The result was that the Bank, with knowledge of the petition, transferred property of the estate without obtaining leave from this Court.

We must point out that the reason this transaction had such a profound impact herein is that there is a strong possibility that the property was transferred for a value grossly below its actual value. The Bank's claim against the debtors was approximately $39,000.00. The third party that paid the obligation presumably paid only that amount and received an assignment of the Bank's security interest in the debtors' property. The debtors claim the property has a fair market value of approximately $665,000.00. Thus, the officious third party paid $39,000.00 for property with a possible value of $665,000.00. If the values estimated by the debtors hold true, clearly it will have been shown that the Bank transferred property to which it had no interest and no right to transfer. (We also note that there is a question raised as to whether the property transferred was properly pledged to the Bank in the first place).

We would expound upon the Bank's reference to the legislative history of § 362(a)(6) by referring to the legislative history of § 362(a) generally. The House of Representatives and the Senate stated that,

The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies *against the debtors property.* Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtors' assets prevents that. (emphasis added).

House Report No. 95–595, 95th Cong., 1st Sess. (1977) 340–2; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 49–51, U.S.Code Cong. & Admin.News 1978, 5787, 6297. We believe this language expresses the overall intent of Congress for the effect of

an automatic stay provision. We believe the transactions occurring among the defendants in this case are prime examples of the conduct the automatic stay is supposed to prevent.

The defendants', Precision Colors, Inc. et al. and First National Bank, motions to dismiss this adversary proceeding are hereby DENIED.

The final motions before the Court are those of First National Bank relative to David L. Penrod. According to the pleadings in the record, Mr. Penrod claims an interest in the *res* which is the subject of the action between the debtors and the defendants. Precision Colors, Inc. et al. and First National Bank. The Bank states in its memorandum that Penrod is in the same position as any other unsecured creditor but for his claim that the Bank allegedly violated an order of the Montgomery County Court of Common Pleas. Such claim, argues the Bank, is not relevant or material to the plaintiff's complaint herein and would be more amenable to a contempt proceeding in Common Pleas Court.

Although the Bank is correct in suggesting that Mr. Penrod can simultaneously institute an action for contempt in the state court at this time without being in violation of the stay, since such an action for contempt would have no direct bearing on the debtors or their property, we believe that Mr. Penrod's interest in the litigation at bar is more than one for obtaining a contempt citation against the Bank. This Court might find either that the Bank was correct in transferring the stock to the other defendants, in which case the stock would now belong to Precision Colors, Inc. et al., and would be out of Penrod's reach or at least require his instituting another action to determine his rights *viz-á-viz* those defendants; or this Court might find that the Bank was wrong to have transferred the stock, in which case it would come into the bankruptcy estate and possibly be available to satisfy Penrod's claim. We believe such a scenario is sufficient to give Mr. Penrod rights as an intervenor under Federal Rule of Civil Procedure 24, which does not re-

quire an intervenor's claim to be against a plaintiff only. It provides that any one may be permitted to intervene "when the applicant claims an interest relating to the property . . . which is the subject of the action . . ." Surely Mr. Penrod has stated such a claim.

Based upon the allegations in Mr. Penrod's application for permission to intervene and upon his pleading, we find that he has stated a claim which is amenable to intervention under Federal Rule of Civil Procedure 24 and that his Answer shall stand.

*ORDERED, ADJUDGED AND DECREED*, that all of the motions should be, and are hereby, denied and dismissed.

Further, it is *ORDERED* that all shares of capital stock in which the debtors owned any interest at the time the petition was filed under Chapter 13 and held by or through any defendants herein be delivered to the standing trustee for temporary impoundment until further order herein, appropriately in aid of the court jurisdiction, and conformably to 28 U.S.C. § 165(a).