### In re ADVANCED RIBBONS AND OFFICE PRODUCTS, INC., Debtor.

### ADVANCED RIBBONS AND OFFICE PRODUCTS, INC., Appellant,

v.

### U.S. INTERSTATE DISTRIBUTING, INC., Russel Leventhal and Frank Montelione, Appellees.

BAP No. CC–90–1931–PVO.

Bankruptcy No. LA90–22381 JD.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 20, 1991.

Decided March 29, 1991.

---

Hugh I. Biele, Los Angeles, Cal., for appellant.

Joel B. Weinberg, Honigman Miller Schwartz and Cohn, Sherman Oaks, Cal., for appellees.

## OPINION

Before PERRIS, VOLINN, and OLLASON, Bankruptcy Judges.

PERRIS, Bankruptcy Judge:

After the debtor defaulted on certain obligations to the appellees and filed bankruptcy, the appellees caused a post-petition foreclosure sale of stock in the debtor held by the debtor's sole shareholder, Anthony Teuber, which stock was pledged to secure the performance of the debtor's obligation. The debtor moved to void the foreclosure sale as being in violation of the automatic stay and to recover damages arising from the sale. This appeal arises from the bankruptcy court's order denying the debtor's motions. We AFFIRM.

## FACTS

The debtor, Advanced Ribbons and Office Products, Inc., ("the debtor" or "Ad-

vanced") was formed in August of 1989 by its sole shareholder, Anthony Teuber, for the purpose of purchasing the assets of appellee, U.S. Interstate Distributing, Inc., ("USID") in a leveraged buy-out transaction in August of 1989. As consideration for the purchase of the USID assets, Advanced executed a promissory note in the principal sum of $600,000 ("the asset note").[1] In addition, Advanced executed a note in the principal amount of $1,800,000 ("the non-compete note") as consideration for a non-competition agreement, under which, appellees Russel Leventhal and Frank Montelione, the principals of USID,[2] agreed not to compete with the debtor. Advanced's obligation under the asset note was secured by accounts receivable, equipment, inventory and other assets of Advanced. The parties also entered a Pledge Agreement under which Teuber pledged all of his stock in Advanced as additional security for its obligations under the asset note, the noncompete note and the non-Competition Agreement. The non-competition agreement provided, *inter alia,* that Leventhal and Montelione "shall never have any claim or recourse under this Agreement or on the Notes executed pursuant hereto, against [Teuber] or COMPU–RITE RIBBON CORPORATION."[3]

By the summer of 1990, disputes had arisen between the parties. Teuber and Advanced contended that USID principals induced the asset purchase through fraudulent misrepresentations as to the value of USID assets and the volume of USID sales. USID and its principals contended that Advanced was taking actions that eroded the value of their security by transferring assets to Compu–Rite and effectively causing a merger between Advanced and Compu–Rite. On August 1, 1990, Advanced defaulted on its obligations under the non-compete note and asset note. The next day USID notified Teuber of the default and accelerated the obligations under the notes.

On August 13, 1990, Advanced gave notice of the rescission of all agreements executed in connection with the purchase.

On August 14, 1990, USID, Leventhal and Montelione filed an action in state court against Advanced and Teuber alleging that Advanced breached its obligations under the notes and agreements executed in connection with the purchase. On August 31, 1990, USID, Leventhal and Montelione provided notice that, pursuant to the Pledge Agreement, Teuber's stock in the debtor would be sold at a public foreclosure sale on September 7, 1990 at 9:00 a.m.

The debtor filed its Chapter 11 petition at approximately 8:40 a.m. on September 7, 1990. At the same time Advanced filed an emergency motion for an order restraining the sale of Teuber's stock in Advanced. A hearing could not, however, be held on the emergency motion until 12:15 p.m. The debtor immediately notified counsel for USID and its principals of the petition. The foreclosure sale nevertheless occurred at 9:00 a.m. on September 7 and Leventhal and Montelione purchased the stock with a credit bid of $100,000. Following the sale, Leventhal and Montelione held a shareholders meeting to elect themselves directors of the debtor and a directors meeting to elect themselves officers of the debtor. Subsequently, Leventhal and Montelione went to the debtor's offices to take possession of the debtor and its assets. Teuber refused to relinquish possession and alleges that Leventhal and Montelione used force and violence to obtain the assets. Because of the contentiousness of the dispute as to who was entitled to possession of the debtor and its assets, the police were called to maintain order.

At 12:15 p.m. on September 7, 1990, the bankruptcy court held a hearing on the debtor's emergency motion for an order restraining the sale of stock and ordered, notwithstanding the earlier stock sale, that Teuber should remain in control and oper-

1. The parties subsequently amended the asset note to adjust the principal amount of the obligation to approximately $463,000.

2. USID, Leventhal and Montelione will be collectively referred to as "the appellees."

3. Compu–Rite Ribbon Corporation was a corporation controlled by Teuber that was a competitor and supplier of USID and Advanced.

ate the debtor until further order of the court. The court further ordered the debtor to file its adversary complaint arising out of these events, any request for temporary injunctive relief and its motion to set aside the stock sale within the next week and that a hearing on such motions would be held on September 14, 1990.

The debtor, on September 11, 1990, filed its motion for an order determining that the stock sale was void and for an order that USID is in contempt for violating the automatic stay of 11 U.S.C. § 362 by conducting the stock sale and attempting to maintain possession of the stock ("the Stock Sale motion"). The next day, the debtor filed an adversary proceeding complaint alleging that the leveraged buy-out transaction was a fraudulent transfer and alleging numerous other causes of action arising from the foreclosure sale of the stock and the appellees' subsequent attempts to gain control of the debtor and its assets. The debtor also filed a motion for an order granting actual and punitive damages on account of the conduct of USID and its principals in purportedly violating the automatic stay by conducting the stock foreclosure sale and attempting to obtain control of the debtor and its assets ("the Damages Motion").

At the September 14, 1990 hearing on these motions, the bankruptcy court determined that the stock is not property of the estate and that the automatic stay did not apply to prevent the stock foreclosure sale. The court, therefore, denied the stock sale motion with prejudice. The court denied the damages motion without prejudice, determining that the damages issues should be decided after a properly noticed evidentiary hearing. The debtor filed this timely appeal from the court's order.[4]

**4.** Subsequent to the filing of the appeal, the Panel denied two requests by the debtor for a stay pending appeal. The Panel also granted the Debtor's motion for leave to appeal the denial of the damages motion without prejudice.

**5.** All of the issues raised by the debtor pertaining to the applicability of the automatic stay and

1. Whether the debtor had standing to assert that the sale of Teuber's stock in the debtor violated the automatic stay.

2. Whether the sale of Teuber's stock in the debtor pursuant to the pledge agreement violated the automatic stay when the stock was pledged to secure a debt of the debtor and Teuber had no personal liability on the debt.

3. Whether the bankruptcy court committed reversible error in denying the debtor's request for an order that the appellees were in contempt for violating the automatic stay and in denying without prejudice the debtor's request for actual and punitive damages.

STANDARD OF REVIEW

The primary issue on appeal involves the scope of the automatic stay under 11 U.S.C. § 362(a)(6). This is a legal issue which we review *de novo*. *See In re Wade*, 115 B.R. 222, 225 (9th Cir. BAP 1990). The debtor's standing to assert a violation of the automatic stay is also a legal issue subject to *de novo* review. *See In re Brooks*, 871 F.2d 89, 90 (9th Cir. 1989).

1. *Whether the debtor had standing to assert that the sale of Teuber's stock in the debtor violated the automatic stay.*

The appellees contend that the debtor lacked standing to assert that the sale of stock violated the automatic stay because the stock was not property of the estate and because a debtor in possession or a trustee has standing to assert that a transfer violates the automatic stay only when that transfer involves property of the estate. The parties do not seriously dispute that Teuber's stock in the debtor is not

whether the debtor was entitled to damages for a violation of the stay are subsumed within these issues. The fraudulent conveyance issue raised by the debtor is beyond the scope of this appeal because this issue was not addressed by the bankruptcy court nor was it within the scope of the motions giving rise to this appeal.

property of the estate.[6] Nevertheless, we determine that the appellees' contention is without merit.

Neither of the cases cited by the appellees support the proposition that a debtor in possession lacks standing when the purported violation of the stay does not involve property of the estate. *In re Contractors Equipment Supply Co.,* 861 F.2d 241 (9th Cir.1988), does not address the issue of standing to assert a violation of the automatic stay; rather it determined whether the estate retained a property interest in the account receivable that was the subject of dispute between non-debtor parties. *In re Curry and Sorensen, Inc.,* 57 B.R. 824 (9th Cir. BAP 1986) determined that standing to assert a fraudulent conveyance under 11 U.S.C. § 544 is limited to a trustee or debtor in possession. Neither of these cases determine that a debtor in possession lacks standing to assert a violation of the automatic stay arising from a post-petition collection action, purportedly against the debtor, that did not involve property of the estate. Those persons whom Congress has designated as beneficiaries of the stay have standing to assert its violation. *See In re Brooks,* 871 F.2d 89, 90 (9th Cir.1989). Section 362(a)(6) protects a debtor from post-petition acts of collection. It follows that the debtor in this case has standing to assert a violation of section 362(a)(6).

2. *Whether the sale of Teuber's stock in the debtor pursuant to the pledge agreement violated the automatic stay when the stock was pledged to secure a debt of the debtor and Teuber had no personal liability on the debt.*

Under 11 U.S.C. § 362(a)(6), the filing of a bankruptcy petition operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case ..." The debtor contends that the foreclosure sale of Teuber's stock in the debtor violated the automatic stay and should be set aside because, given the lack of a personal obligation on behalf of Teuber, the sale was an act to collect a pre-petition claim against the debtor. The appellees contend that the sale was a proper exercise of their contractual and state law rights against a non-debtor party and was not subject to the automatic stay.

The automatic stay of section 362(a) protects only the debtor, property of the debtor or property of the estate. *See, e.g., In re Casgul of Nevada, Inc.,* 22 B.R. 65, 66 (9th Cir. BAP 1982). It does not protect non-debtor parties or their property. *See, e.g., Credit Alliance Corp. v. Williams,* 851 F.2d 119, 121–22 (4th Cir. 1988); *Casgul of Nevada,* 22 B.R. at 66. Thus, section 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor. *See, e.g., Ingersoll–Rand Financial Corp. v. Miller Mining Co.,* 817 F.2d 1424, 1427 (9th Cir. 1987) (guarantors); *In re Lockard,* 884 F.2d 1171 (9th Cir.1989) (automatic stay did not prevent an action against a surety on a contractor's bond); *see also* 2 *Collier on Bankruptcy,* ¶ 362.02[1] at 362–28–29 (15th ed. 1990). Similarly, the automatic stay does not protect the property of parties such as officers of the debtor, *see, e.g. Casgul of Nevada,* 22 B.R. at 66, even if the property in question is stock in the debtor corporation. *See In re Calamity Jane's, Inc.,* 22 B.R. 5 (Bankr.D.N.J.1982).

Under Cal.Civ.Code § 2787, a "surety or guarantor is one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefor...." *See Alexander v. Bosworth,* 26 Cal.App. 589, 147 P. 607, 610 (1915).[7] Because Teuber pledged his stock as security for the obligation of the debtor under the notes and non-competition

---

**6.** Although the debtor does assert in its reply brief that it has an equitable interest in the stock owned by Teuber, it cites no authority in support of the novel proposition that a corporation has a property interest in its issued stock. In addition, at page 9 of its reply brief, the debtor concedes that the stock is not property of the estate.

**7.** Section 2787 abolished the distinction between sureties and guarantors.

agreement, he is considered a surety or guarantor under California law and under a plain interpretation of the above authorities, section 362(a) would not stay any acts taken against him.

The debtor argues, however, that the stock foreclosure sale was nevertheless stayed as an act to collect a pre-petition claim against the debtor because, given the fact that Teuber had no personal liability, the sale was an act to collect a claim against the debtor. The debtor's arguments implicitly recognize that an act to collect against a guarantor or surety is not within the scope of section 362(a)(6) because it is an act to collect a claim against the surety or guarantor rather than a claim against the debtor.[8] The debtor contends, however, that unlike the guaranty and surety cases, the sole obligation in this case was that of the debtor and that the sale, therefore, could not be an act to collect a claim against Teuber but must necessarily be an act to collect a claim against the debtor within the scope of section 362(a)(6).

We find the debtor's argument to be unpersuasive because, notwithstanding the lack of personal liability, the sale did not involve collection of a claim against the debtor. Rather the sale involved the collection of a claim against the property of Teuber. In essence, the appellees had a claim[9] against the debtor, the debtor's property and Teuber's stock in the debtor. The foreclosure sale was an act to collect a claim against Teuber's property—his stock in the debtor—just as an action against a guarantor is an act to collect a claim against the guarantor. In addition, the claim against Teuber's property could be viewed as a claim against Teuber. Despite the lack of personal liability, Teuber has a nonrecourse obligation to the appellees. Although it is arguably not directly applicable to the present situation, 11 U.S.C. § 102(2) discloses the Code's intent to treat such nonrecourse claims as claims against the owner of the property for purposes of determining the existence of a claim.[10] Thus the foreclosure sale could properly be viewed as an act to collect a claim against Teuber and not within the scope of section 362(a)(6).[11]

The debtor's attempts to distinguish this case from the guarantor cases is without substance. A guarantor's or a surety's obligation to the creditor is no more separate and independent from the primary debtor's obligation than is Teuber's obligation in this case. All such obligations arise from a document by which a party agrees to answer for the debt of another. The only possible difference is that Teuber's obligation is limited to the value of the property he pledged as collateral while a guarantor's or surety's obligation may

---

**8.** Virtually all of the surety, guarantor and co-debtor cases cited and reviewed dealt with the stay of proceedings under section 362(a)(1) and did not expressly address the applicability of section 362(a)(6) to actions against co-debtors to recover debts upon which the debtor was also liable. Viewing such actions as acts to collect a claim against the co-debtor, however, would remove such actions from the scope of section 362(a)(6).

**9.** 11 U.S.C. § 101(4) defines claim as a right to payment or a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment.

**10.** Section 102(2) provides that "'claim against the debtor' includes claim against property of the debtor." The legislative history indicates that this provision,

> is intended to cover nonrecourse loan agreements where the creditor's only rights are against the property of the debtor, and not

against the debtor personally. Thus, such an agreement would give rise to a claim that would be treated as a claim against the debtor personally, for purposes of the bankruptcy code.

S.Rep. No. 95–989, 95th Cong.2d Sess. at 28 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5814. Under this provision, if Teuber were the debtor, the claim against his property under the pledge agreement would be considered a claim against him personally.

**11.** The debtor's citation to the Uniform Commercial Code for the proposition that Advanced, as the obligor, should be considered the debtor does not compel a contrary result. California Commercial Code § 9105(1)(d) recognizes that the owner of the collateral may be considered the debtor for certain purposes. In addition, neither the Uniform Commercial Code nor the cases cited by the debtor purport to determine whether there is a claim against the owner of the collateral for purposes of the Bankruptcy Code.

not be so limited. We do not believe that the nonrecourse nature of Teuber's obligation provides a valid basis for distinction. In addition to the reasons set forth in the immediately preceding paragraph, in *Lockard*, 884 F.2d at 1176–77, the Ninth Circuit determined that section 362(a) did not stay an action to collect against the debtor's contractor's license bond.[12] Just as Teuber's obligation in this case is limited to the value of the property, the surety's obligation in that case is limited to the amount of the bond.

The inapplicability of section 362 to stay acts against a non-debtor's property that is pledged to secure a debt of the debtor is further suggested by a consideration of 11 U.S.C. §§ 1201 and 1301. Sections 1201 and 1301 extend the automatic stay in Chapter 12 and 13 cases to stay any acts "to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, *or that secured such debt* ..." (emphasis supplied). If the debtor was correct that the section 362(a)(6) stay prevented the foreclosure of third party property that is pledged to secure a debt of the debtor, the utilization of sections 1201 and 1301 to stay acts against an individual that secured a debt of the debtor would be unnecessary.

The conclusion that the stay does not apply to acts against a non-debtor's property that secures a debt of the debtor is also consistent with the pertinent case law. Aside from the above-cited authorities that determined that the stay did not apply to actions against co-debtors or guarantors, other cases have rejected challenges to acts against non-debtor property that secured a debt of the debtor. *In re Price Chopper Supermarkets, Inc.*, 40 B.R. 816, 817 (Bankr.S.D.Cal.1984) determined that the automatic stay was not violated by the post-petition sale of certain AT & T stock that was owned by a third party and pledged as collateral for the debtor's obligation to a bank.[13] *See also In re Monroe Well Service, Inc.*, 67 B.R. 746, 750 (Bankr. E.D.Pa.1986). Similarly, *In re River Family Farms, Inc.*, 85 B.R. 816, 818 (Bankr.N. D.Iowa 1987) determined that the execution sale of stock in the debtor held by the debtor's principals to enforce a judgment against the principals arising from the debt of the debtor would not be a violation of the automatic stay.

The cases relied upon by the debtor are not to the contrary. *In re Jandel*, 8 B.R. 855 (Bankr.S.D.Ohio 1981), determined that a secured creditor's assignment of its interest in stock that the debtor pledged to it as security was an act to collect a debt of the debtor within the scope of section 362(a)(6). *In re Brilliant Glass, Inc.*, 99 B.R. 16 (Bankr.C.D.Cal.1988) determined that the assertion of unfounded claims against the debtor's customers was essentially an act to compel the debtor to pay its debt to the creditor. As with most of the cases cited by the debtor, neither of these cases involved an act against collateral owned by a third party to collect a debt upon which the debtor was liable. Although *In re Pioneer Valley Indoor Tennis Center, Inc.*, 20 B.R. 884 (Bankr.D.Mass.1982) determined that the automatic stay prevented the sale of collateral that the debtor conveyed to a third party prior to the petition, the property involved in that case had always been used as part of the debtor's business operation without regard for ownership distinctions. Moreover, *Pioneer Valley* did not consider the interplay between sections 362(a)(6) and 1301 or the authorities recognizing that an action against a guarantor is not subject to the automatic stay.

The debtor also relies heavily upon *In re Gustafson*, 111 B.R. 282 (9th Cir. BAP

---

**12.** The precise issue addressed in *Lockard* was whether the bond was property of the estate so that the action was stayed under section 362(a)(3). Implicit in the court's determination, however, was a determination that the other provisions of section 362(a) did not stay the action.

**13.** The debtor correctly points to various distinguishing factors which prevent *Price Chopper* from being directly on point. Nevertheless, as in this case, the owner of the pledged stock in *Price Chopper* was not personally obligated to the creditor and *Price Chopper* provides persuasive authority for the proposition that a sale of such pledged stock does not violate the automatic stay.

1990) to argue that the appellees' actions violated the automatic stay because those actions involved an attempt to collect a presumed but not yet determined claim against the debtor. The debtor's reliance upon *Gustafson* is misplaced. In *Gustafson*, the Panel determined that the creditor violated the automatic stay by attempting to collect a debt that was presumed to be nondischargeable under section 523(a)(8), but which the bankruptcy court had not yet determined to be nondischargeable. In resolving this question, the Panel faced the applicability of the rule that the automatic stay does not apply to the collection of nondischargeable debts to a situation where the statute created a presumption of nondischargeability. In this case, the question concerns the existence of a claim against the debtor and Teuber's property. While the allowability of such claims has yet to be determined, there is no question as to the existence of the claims. In addition, there is no statutory presumption as to the existence of such claims or as to the existence of a condition, such as nondischargeability, that would render the stay inapplicable.

The debtor also argues that the stay of section 362(a) should be extended to Teuber because this case involves exceptional circumstances. *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir.1986), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986) (extending the automatic stay to preclude an action against the debtor's co-defendants where there is such identity between the debtor and the co-defendants that the debtor may be said to be the real party defendant and a judgment against the third-party defendant would be in effect a judgment against the debtor). The debtor's argument is unpersuasive. In *Lockard*, 884 F.2d at 1179, the Ninth Circuit declined to adopt the unusual circumstances rule of *A.H. Robins*. In addition, *A.H. Robins* stayed the action against the debtor's insurer in part because of concerns that the insurance policy was proper-

ty of the estate. There is no contention in this case that the debtor's stock is property of the estate. The *A.H. Robins* court also relied upon the fact that the co-defendants were entitled to indemnity from the debtor and a judgment against them would bind the debtor. In this case, the stock foreclosure sale did not involve a judgment that could bind the debtor. Finally, the issue in *A.H. Robins* was whether to issue a prospective injunction and the court blended its analysis of section 362 issues with its analysis of its injunctive powers under section 105. In this case, the court's injunctive powers under section 105 are not raised.[14]

Finally, interspersed throughout appellant's briefs are essentially policy arguments in which the debtor argues for a broad application of the automatic stay and argues that declining to apply the automatic stay would allow some creditors—the appellees—to obtain preferential treatment by allowing them to obtain control of the debtor and ultimately its assets. There are also, however, countervailing policy concerns. Essentially, this is a dispute between non-debtor parties as to who owns property that is not an asset of the estate. The fact that the asset is the stock of the debtor and the fact that control of that asset allows for control of the debtor implicate, to a certain extent, the policies and purposes of the Bankruptcy Code. This dispute, however, has no impact upon the estate that will be available for distribution to the creditors because whoever controls the debtor will be held to fiduciary standards in its dealing with the debtor's assets. To the extent the appellees receive preferential treatment, they do so only by virtue of their enforcement of state law and contractual rights against a non-debtor party. The cases allowing actions to proceed against non-debtor guarantors implicitly recognize that such preferential treatment is permitted by the Bankruptcy Code.

14. Similarly, although a debtor may, in certain circumstances, obtain an injunction under section 105 of acts that would cause a change in management of the debtor, *see, e.g., In re Johns-* *Manville Corp.*, 801 F.2d 60 (2d Cir.1986), this appeal does not address the bankruptcy court's power to issue a prospective injunction under section 105.

For the above reasons, the bankruptcy court correctly concluded that the foreclosure sale of Teuber's stock in the debtor did not violate the automatic stay.

3. *Whether the bankruptcy court committed reversible error in denying the debtor's request for an order that the appellees were in contempt for violating the automatic stay and in denying without prejudice the debtor's request for actual and punitive damages.*

The debtor contends that the bankruptcy court erred in denying its request for an order that USID is in contempt for violating the automatic stay of 11 U.S.C. § 362 by conducting the stock sale and attempting to maintain possession of the stock. Because, as discussed above, we determine that the stock sale did not violate the automatic stay, we affirm the bankruptcy court's order in this regard.

The debtor also contends that the bankruptcy court erred in denying without prejudice its motion for an order granting actual and punitive damages on account of the conduct of USID and its principals in violating the automatic stay by attempting to obtain control of the debtor and its assets after the stock sale. At the September 14 hearing on these motions, the bankruptcy court indicated that this matter should be raised through an evidentiary hearing. Transcript of September 14, 1990, Hearing at 45–46. The debtor agreed and does not contend on appeal that the matter should have been determined without the presentation of evidence. Indeed, the parties' presentation of inconsistent declarations as to the events giving rise to this claim for damages, suggests that a determination of this issue will require the presentation of evidence and factual findings which should be made in the first instance by the bankruptcy court. The bankruptcy court's order denying the Damages Motion without prejudice does not prevent the debtor from raising this issue by a proper procedural vehicle and is therefore affirmed.

**CONCLUSION**

For the reasons set forth above, we determine that the stock sale did not violate the automatic stay and we therefore AFFIRM the bankruptcy court's decision.