NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.   CC-16-1121-FMcTa |
| | ) | |
| MBE DIGITAL, INC., | ) | Bk. No.   2:12-bk-34701-BR |
| | ) | |
|                     Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ADESORN HEMARATANATORN, | ) | |
| | ) | |
|                     Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| DAVID J. PASTERNAK, | ) | |
| | ) | |
|                     Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on October 21, 2016
at Pasadena, California

Filed – November 9, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

Appearances:     Clark Rivera argued on behalf of Appellant Adesorn Hemaratanatorn; Alan Wayne Forsley of Fredman Lieberman Pearl LLP argued on behalf of Appellee David J. Pasternak.

Before: FARIS, McKITTRICK,[**] and TAYLOR, Bankruptcy Judges.

---

     [*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

     [**] The Honorable Peter C. McKittrick, United States Bankruptcy Judge for the District of Oregon, sitting by designation.

## INTRODUCTION

Appellant Adesorn Hemaratanatorn appeals from the bankruptcy court's denial of his motion to vacate the California superior court's award of fees and costs to appellee David J. Pasternak, the court-appointed receiver for debtor MBE Digital, Inc. He argues, among other things, that the award violated the automatic stay of § 362[1] and intruded upon the bankruptcy court's exclusive jurisdiction under §§ 503 and 543. We disagree; there was no stay violation because the fees and costs were levied against Mr. Hemaratanatorn and others, not against the debtor or its estate, and the bankruptcy petition did not divest the superior court of jurisdiction over the fee award. Accordingly, we AFFIRM.

## FACTUAL BACKGROUND

MBE is a digital printing corporation that was formed by Mr. Hemaratanatorn, Michael Hellyar, and Brian Rayner. This case arises from the infighting among these three shareholders and others.

In 2009, Mr. Hellyar's wife, Annette Hellyar, filed for divorce. In the dissolution proceedings, Mrs. Hellyar contended that Mr. Hellyar's interest in MBE was a community asset. Mr. Hellyar disputed this claim and sought declaratory relief to establish his rights and to determine the rights of Mrs. Hellyar, Mr. Hemaratanatorn, Mr. Rayner, and Mr. Rayner's girlfriend,

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

Cindy Lujan.

Mr. Hemaratanatorn then alleged that Mrs. Hellyar, Mr. Rayner, and Ms. Lujan conspired to wrest control of MBE away from him and Mr. Hellyar and loot the business. Mr. Hellyar and Mr. Hemaratanatorn brought a shareholder's derivative action to establish their ownership interests in MBE. They also filed an ex parte application for the appointment of a receiver. Although the superior court was hesitant to appoint a receiver and suggested less drastic alternatives, in August 2010, it appointed Mr. Pasternak as receiver for MBE. The superior court ordered that MBE was responsible for payment of Mr. Pasternak's fees and costs.

Initially, Mr. Pasternak was only charged with reviewing MBE's records. Then, in December 2010, Mr. Hemaratanatorn filed an ex parte application requesting that Mr. Pasternak be given full powers over MBE. He alleged that Mrs. Hellyar, Mr. Rayner, and Ms. Lujan had converted MBE's business to a new company, BMR Digital.

The superior court granted Mr. Pasternak full and exclusive power, duty, and authority to administer and manage all of MBE's business affairs. Mr. Pasternak was authorized to take possession of MBE's records, assets, and property.

In early 2011, Mr. Pasternak requested that the superior court include BMR in the receivership, alleging that BMR had siphoned off significant funds from MBE and failed to turn over MBE's records. The superior court granted the request.

Mr. Pasternak reported that MBE owed significant debts, that he had not been able to reduce MBE's financial obligations,

3

and that he was defending a number of lawsuits against MBE. By then, Mr. Pasternak had incurred over $250,000 in unpaid fees and costs.

In August 2011, Mr. Rayner and Ms. Lujan filed a motion seeking to terminate the receivership (or, in the alternative, to direct Mr. Pasternak to file for bankruptcy on behalf of MBE), arguing that MBE was losing money and incurring debts it could never satisfy. Mr. Pasternak and Mr. Hellyar opposed the motion.[2]

In November 2011, Mr. Rayner and Ms. Lujan again filed a motion to terminate the receivership. This time, Mr. Pasternak supported termination because he had not received compensation or reimbursement of costs and the matter was a significant strain on his office. But Mr. Hellyar and Mr. Hemaratanatorn opposed the second motion and asserted that MBE was a profitable and viable company. The superior court denied the motion to terminate the receivership because it wanted Mr. Pasternak to continue serving as receiver during the upcoming trial.

By December 2011, Mr. Pasternak's fees and costs totaled $417,073.85, and he owed other professionals over $90,000. He informed the superior court that none of his fees had been paid due to lack of funds in the estate and that he could not "continue to serve in this matter any longer unless the parties provide for the payment of the receivership's substantial unpaid costs of administration." In late December 2011, he informed the

---

[2] The state court record does not include a formal ruling on the August 2011 request. Presumably, the superior court denied the motion.

4

superior court that he "will ask the court to hold all of the individual parties jointly and severally responsible for the unpaid receivership costs of administration."

After a bifurcated trial on the equitable claims in February 2012, the superior court ordered that, upon payment of $250,000 to Mr. Pasternak, the receivership would terminate and control of MBE would revert to Mr. Hellyar and Mr. Hemaratanatorn.

In May 2012, Mr. Pasternak informed the superior court that he had not received the $250,000 payment; and so the receivership continued.

On July 18, 2012, MBE, through Mr. Hellyar, filed a voluntary chapter 11 petition without Mr. Pasternak's knowledge or consent.[3] Mr. Pasternak immediately turned over custody, possession, and control of MBE's business to MBE.

In September 2012, Mr. Pasternak filed in the superior court a final report and account and a motion for fees and costs ("Fee Motion"). He stated that his total unpaid fees and costs exceeded $535,000 and that other professionals' fees exceeded $90,000. Mr. Pasternak requested that the superior court hold all individual parties jointly and severally liable for the receivership fees and costs, "because all of them are or claimed to be owners of the receivership business, and this receivership thereby operated that business for their benefit during this receivership. This request is not a surprise because I have repeatedly stated my intention to make this request in my

---

[3] On February 21, 2013, upon motion by the United States Trustee, the bankruptcy court converted MBE's chapter 11 case to one under chapter 7.

previously filed and served interim reports."

Mr. Hellyar and Mr. Hemaratanatorn opposed the final report. In particular, Mr. Hemaratanatorn proclaimed his innocence and asserted that Mr. Pasternak's conduct may have hurt MBE as much as (or more than) the actions of Mr. Rayner, Ms. Lujan, and Mrs. Hellyar.

In November 2012, the superior court approved Mr. Pasternak's final report and account. It issued an order ("Fee Order") determining that Mr. Hemaratanatorn, Mr. Rayner, Ms. Lujan, Mr. Hellyar, and Mrs. Hellyar were jointly and severally liable for receivership fees and costs totaling $626,244.11. The superior court also ruled that the individual parties "jointly and severally shall defend and indemnify the Receiver against any claims, demands, debts, etc. which may arise from the receivership." The Fee Order discharged Mr. Pasternak and exonerated his bond.

In May 2014, the California Court of Appeals upheld the Fee Order. The appellate court held (among other things) that Mr. Pasternak's fees were reasonable; there was no misadministration; and Mr. Hemaratanatorn and Mr. Hellyar were jointly and severally liable for the receivership's fees and costs.

On February 9, 2016, about four years after MBE filed for bankruptcy and nearly two years after the California Court of Appeals affirmed the Fee Order, Mr. Hemaratanatorn filed a motion in the bankruptcy court to vacate the superior court's Fee Order ("Motion to Vacate"). He argued (among other things) that, at the time MBE filed for bankruptcy in July 2012, "the automatic

6

stay was in place and the state court was divested of jurisdiction to rule upon the Receiver's administration of the estate, discharge, and fees."

After a hearing, the bankruptcy court denied the Motion to Vacate. It held that the Fee Order did not violate the automatic stay and, as a result, the Fee Order was binding on the bankruptcy court.

Mr. Hemaratanatorn timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and (2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the Fee Order violated the automatic stay.

(2) Whether §§ 503 and 543 divested the superior court of jurisdiction to decide the Fee Motion.

(3) Whether the Fee Order had preclusive effect.

## STANDARDS OF REVIEW

We review the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. Hansen v. Moore (In re Hansen), 368 B.R. 868, 874 (9th Cir. BAP 2007). "De novo review requires that we consider a matter anew, as if no decision had been made previously." Francis v. Wallace (In re Francis), 505 B.R. 914, 917 (9th Cir. BAP 2014) (citation omitted). A bankruptcy court clearly errs if its findings were illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

7

We review de novo the bankruptcy court's determination as to whether the automatic stay provisions of section 362 have been violated. Palm v. Klapperman (In re Cady), 266 B.R. 172, 178 (9th Cir. BAP 2001), aff'd, 315 F.3d 1121 (9th Cir. 2003) (citation omitted); Advanced Ribbons & Office Prods., Inc. v. U.S. Interstate Distrib., Inc. (In re Advanced Ribbons & Office Prods., Inc.), 125 B.R. 259, 262 (9th Cir. BAP 1991) (the scope of the automatic stay is "a legal issue which we review de novo").

Similarly, we review de novo questions of jurisdiction. See McCowan v. Fraley (In re McCowan), 296 B.R. 1, 2 (9th Cir. BAP 2003) ("Whether a court has subject matter jurisdiction is a question of law that we review de novo."); Odd-Bjorn Huse v. Huse-Sporsem, A.S. (In re Birting Fisheries, Inc.), 300 B.R. 489, 497 (9th Cir. BAP 2003) ("Subject matter jurisdiction is a question of law.").

"[T]he availability of issue preclusion is reviewed de novo." Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007) (citation omitted).

## DISCUSSION

**A.   The Fee Order did not violate the automatic stay.**

Mr. Hemaratanatorn contends that the Fee Order violated the automatic stay, because the filing of MBE's bankruptcy petition operated to stay all superior court proceedings, even the superior court's consideration of the Fee Motion.  We disagree.

Mr. Hemaratanatorn argues that the automatic stay precluded a broad range of acts, including the superior court's decision on the Fee Motion.  He says that § 362(a)(3), which prohibits "any

8

act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" precluded the superior court from entering the Fee Order.

Mr. Hemaratanatorn misapprehends the nature of the automatic stay, or the scope of the Fee Order, or both. The Fee Order was not directed toward MBE or its estate, but rather toward the individual shareholders and others. In other words, the Fee Order did not concern "the property of the estate."

It is well settled that the automatic stay is applicable only to the debtor and the estate and does not protect nondebtors.

> [S]ection 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor. . . . Similarly, the automatic stay does not protect the property of parties such as officers of the debtor, even if the property in question is stock in the debtor corporation, and even if that stock has been pledged as security for the debtor's liability.

Boucher v. Shaw, 572 F.3d 1087, 1092-93 (9th Cir. 2009) (internal citations and quotation marks omitted); see Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.), 502 F.3d 1086, 1095 (9th Cir. 2007) ("we have consistently held that the automatic stay does not apply to suits against non-debtors"); In re Advanced Ribbons & Office Prod., Inc., 125 B.R. at 263 ("The automatic stay of section 362(a) protects only the debtor, property of the debtor or property of the estate. It does not protect non-debtor parties or their property.").

Put simply, Mr. Hemaratanatorn's position rests on a false premise: that the automatic stay applies to **any** action relating

9

in any way to the debtor. However, the automatic stay is not so broad and is limited to the situations enumerated in § 362(a). In this case, the Fee Order did not concern "the property of the estate" and did not affect MBE's bankruptcy estate. There was no violation of the automatic stay.[4]

Mr. Hemaratanatorn argues that the Fee Order impacted the property of MBE's bankruptcy estate because it "operates to deprive the Debtor of any choses in action arising from Receiver misconduct, and such choses in action are, legally and undeniably, property of the bankruptcy estate." He also contends that the superior court, "by imposing a huge derivative liability on MBE's shareholders, at the same time created an enormous indemnity liability on the part of MBE towards those shareholders, and this sort of action readily predicts to complicate the Debtor's prospects for emerging from bankruptcy."

But, as Mr. Pasternak's counsel agreed at oral argument, the Fee Order is not binding on the bankruptcy trustee and does not affect the estate's rights. Whatever surcharge rights exist

---

[4] We have recognized that the bankruptcy court may extend the automatic stay to nondebtors under the "unusual circumstances" doctrine, where the interests of the debtor and the nondebtor are inextricably interwoven. In re Ripon Self Storage, LLC, BAP No. EC-10-1325-HKiD, 2011 WL 3300087, at *6 (9th Cir. BAP Apr. 1, 2011). However, this "extension" is really "an injunction issued by the bankruptcy court after a hearing where it is established that unusual circumstances are needed to protect the administration of the bankruptcy estate. Thus, any extension of the automatic stay to nondebtors does not occur automatically but requires the filing of an adversary proceeding requesting the bankruptcy court to act under § 105(a)." Id. (citations omitted). The bankruptcy court did not extend the protections of the automatic stay to any of the nondebtors, and Mr. Hemaratanatorn did not appeal on this basis.

10

under § 543(c)(3) are still available to the estate. See § 543(c)(3) (after notice and a hearing, the court shall "surcharge such custodian . . . for any improper or excessive disbursement . . . ."). The Fee Order imposed significant liability upon the individual shareholders, but it did not impose any liability upon, or take any rights away from, MBE.[5] See Boucher, 572 F.3d at 1092-93.

Therefore, the Fee Order did not violate the automatic stay.[6]

**B.** **Neither § 503 nor § 543 deprived the superior court of jurisdiction to consider and enter the Fee Order.**

Mr. Hemaratanatorn argues that, when MBE filed its bankruptcy petition, the superior court immediately lost jurisdiction to consider and approve the Fee Motion. He is

---

[5] If the Fee Order barred any claims by the bankruptcy trustee or the estate against Mr. Pasternak or his surety, the Fee Order would be void, but only to that extent. Mr. Pasternak's counsel so agreed at oral argument.

[6] Mr. Hemaratanatorn argues that the bankruptcy filing immediately suspended the shareholder's derivative action (because the shareholders then allegedly lacked standing to act on behalf of MBE), thus divesting Mr. Pasternak of his ability to take any action in the superior court litigation. Mr. Pasternak correctly states that Mr. Hemaratanatorn did not present this issue to the bankruptcy court. We will not consider arguments raised for the first time on appeal. See Ezra v. Seror (In re Ezra), 537 B.R. 924, 932 (9th Cir. BAP 2015).

Mr. Hemaratanatorn contends that his argument concerns subject matter jurisdiction, which can be raised at any time. As we explain herein, the bankruptcy case did not affect the superior court's subject matter jurisdiction over Mr. Pasternak's compensation taxed against nondebtors and could not preclude its consideration of the Fee Motion.

11

mistaken.

Mr. Hemaratanatorn's argument rests on a false premise: that §§ 503(b)(3)(E) and 543(c)(2) are jurisdictional statutes that divest other courts of jurisdiction. He argues, without authority, that "[s]ection 543 . . . grants the bankruptcy court exclusive jurisdiction to determine the reasonableness of the receiver's unpaid fees and costs and to order their payment . . . ."

Mr. Hemaratanatorn uses the term "jurisdiction" all too loosely. The bankruptcy court's jurisdiction is governed by 28 U.S.C. §§ 157 and 1334. Nothing in §§ 503 or 543 or Rule 6002[7] purports to confer exclusive jurisdiction on the bankruptcy court or otherwise limit the jurisdiction of a state court.

Our holding is consistent with the Supreme Court's jurisprudence that courts should not read a jurisdictional limitation into a statute where none exists:

> **when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.** Applying that readily administrable bright line to this case, we hold that the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue.

Arbaugh v. Y&H Corp., 546 U.S. 500, 516 (2006) (emphasis added) (construing 42 U.S.C. § 2000e).

Sections 503 and 543 permit a bankruptcy court to decide fee

---

[7] Rule 6002 is a procedural rule that could not affect the jurisdiction of any court.

12

applications by custodians but do not grant it jurisdiction, let alone exclusive jurisdiction. Following the Supreme Court's bright-line test in Arbaugh, we note that §§ 503 and 543 do "not speak in jurisdictional terms or refer in any way to the jurisdiction of the [bankruptcy] courts." Id. at 515.

Moreover, Mr. Hemaratanatorn overlooks the fact that § 503 concerns "administrative expenses." Although not explicitly defined, administrative expenses are important to the extent necessary to determine which claims against the bankruptcy estate have priority under § 507. See § 507(a)(2). In the present case, the fee award was not levied against MBE's bankruptcy estate and therefore does not concern "administrative expenses" as understood by the Bankruptcy Code.

Mr. Hemaratanatorn cites Moore v. Scott, 55 F.2d 863 (9th Cir. 1932), for the proposition that the bankruptcy court has exclusive jurisdiction to consider a receiver's fees, even when the receiver was appointed prebankruptcy. Moore's status as binding authority is questionable; it was decided five decades before Congress restructured the jurisdiction of the bankruptcy courts in 1984. Further, Moore did not consider the issue at bar here: whether a nonbankruptcy court may enter a fee award against **nondebtors**. Rather, it held that, once "a bankruptcy has supervened, no other court has the power or authority partially to administer or to deplete **the estate**, by **disposing of or impressing a lien upon it** or upon any part thereof - valid prior liens, of course, excepted - not even in favor of its own receivers." 55 F.2d at 865 (emphases added). Similarly, other authorities cited by Mr. Hemaratanatorn are premised on actions

13

against a bankruptcy estate.  See, e.g., Gross v. Irving Tr. Co., 289 U.S. 342, 344 (1933) (holding that the state court cannot determine a receiver's compensation, because, "[u]pon adjudication of bankruptcy, title to all the property of the bankrupt, wherever situated, vests in the trustee as of the date of filing the petition in bankruptcy"); In re China Village, LLC, Case No. 10-60373-ASW, 2012 WL 32684, at *5 (Bankr. N.D. Cal. Jan. 4, 2012) ("decisions affecting the [bankruptcy estate's] property fall under the domain of this Court").

In any event, Mr. Hemaratanatorn lacks standing to enforce § 543 on behalf of MBE.  The trustee is the representative of the bankruptcy estate and has exclusive standing to enforce the estate's rights.  See § 323(a) ("The trustee in a case under this title is the representative of the estate."); Ahcom, Ltd. v. Smeding, 623 F.3d 1248, 1250 (9th Cir. 2010) ("When the trustee does have standing to assert a debtor's claim, that standing is exclusive and divests all creditors of the power to bring the claim."); Smith v. Arthur Andersen LLP, 421 F.3d 989, 1002 (9th Cir. 2005) ("[u]nder the Bankruptcy Code the trustee stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy").

Accordingly, the superior court had jurisdiction to enter the Fee Order.[8]

---

[8] Mr. Hemaratanatorn also argues that Mr. Pasternak violated § 543(b) and Rule 6002 by failing to provide the bankruptcy court with a full accounting.  We make no determination as to this issue, as it is not relevant to this appeal (and

(continued...)

14

**C.   The bankruptcy court had no authority to review the superior court's Fee Order.**

Having determined that the Fee Order did not violate the automatic stay or trespass on the bankruptcy court's exclusive jurisdiction, we turn to Mr. Hemaratanatorn's argument that he should be able to argue his position to the bankruptcy court because the Fee Order was unjust.[9]

The bankruptcy court determined that, because the superior court had the authority to enter the Fee Order, the Rooker-Feldman doctrine[10] and preclusion principles prevented it from reexamining the substance of the Fee Order.  We agree.

Mr. Hemaratanatorn's argument is based on a false premise: that the Rooker-Feldman doctrine is inapplicable because Mr. Pasternak "and the state court flagrantly violated the exclusive subject matter jurisdiction of the bankruptcy court and the result was an order which violates the Supremacy Clause and should be vacated."

However, as discussed above, the Fee Order did not intrude upon the bankruptcy court's jurisdiction, nor did it violate the

---

[8] (...continued) Mr. Hemaratanatorn lacks standing to raise this issue).

[9] The situation would be different if MBE's chapter 7 trustee were asserting claims under § 543 or otherwise.  As we state above, we do not think that the superior court's Fee Order is binding on the trustee or deprives the trustee of any rights against Mr. Pasternak or his surety.

[10] The Rooker-Feldman doctrine arose from the United States Supreme Court decisions in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1983).

15

automatic stay.

The bankruptcy court had no authority to review the Fee Order. The Full Faith and Credit Act, which implemented the Constitution's Full Faith and Credit Clause, requires that we accord the decisions of state courts "the same full faith and credit . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738; see Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 80-81 (1984). Neither the bankruptcy court nor this Panel can review the decisions of the superior court. "[T]he Rooker-Feldman doctrine provides that the United States Supreme Court is the only federal court that may review an issue previously determined or 'inextricably intertwined' with the previous action in state court between the same parties." In re Birting Fisheries, Inc., 300 B.R. at 498; see Noel v. Hall, 341 F.3d 1148, 1158 (9th Cir. 2003) ("A federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial decision of a state court must refuse to hear the forbidden appeal. As part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision.").

Accordingly, the bankruptcy court did not have the authority to allow Mr. Hemaratanatorn to relitigate what the California state courts have already decided. It properly declined to vacate the Fee Order.

## CONCLUSION

For the reasons set forth above, the California superior court had authority to decide the Fee Motion, and its decision

16

did not violate the automatic stay or any jurisdictional statute. Therefore, we AFFIRM.