SECURITIES INVESTOR PROTECTION CORPORATION, Plaintiff,

v.

BERNARD L. MADOFF INVEST- MENT SECURITIES LLC, Defendant.

In re Bernard L. Madoff, Debtor.

Irving H. Picard, Trustee for the Liqui- dation of Bernard L. Madoff Invest- ment Securities LLC, Plaintiff,

v.

Fairfield Greenwich Limited, et al., Defendants.

Adversary Nos. 08–1789 (BRL), 12–02047 (BRL). District Court No. 12–CIV–9408 (VM).

United States District Court, S.D. New York.

March 20, 2013.

See also 728 F.Supp.2d 354, 728 F.Supp.2d 372, 424 B.R. 122.

rence Roether, Simpson Thacher & Bartlett LLP, New York, NY, for Defendants.

David A. Barrett, Howard L. Vickery, II, Boies, Schiller & Flexner, LLP, New York, NY, for Defendants.

Lee A Casey, Andrew M. Grossman, David B. Rivkin, Baker & Hostetler LLP, Washington, DC, Tracy Lynn Cole, Nicholas J. Cremona, Marc E. Hirschfield, Thomas Leslie Long, Deborah Hilarie Renner, David J. Sheehan, Baker & Hostetler LLP, New York, NY, Mark Allen Kornfeld, Hogan & Hartson L.L.P., New York, NY, Keith R. Murphy, United States Attorney's Office, for Plaintiff.

Daniel J. Fetterman, Marc E. Kasowitz, Kasowitz, Benson, Torres & Friedman, LLP, New York, NY, for Jeffrey H. Tucker, Defendant.

### *DECISION AND ORDER*

VICTOR MARRERO, District Judge.

On November 29, 2012, Irving Picard (the "Trustee"), trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), instituted adversary proceeding No. 12–02047 requesting an Application for Enforcement of Automatic Stay and Related Stay Orders and Issuance of a Preliminary Injunction (the "Stay Application"). (Dkt. No. 40, Ex. C.) The Stay

Application seeks to (1) enforce the automatic stay of the Bankruptcy Code and the related stay orders issued by the Court on December 15, 2008, December 18, 2008, and February 9, 2009 (the "Stay Orders"); [1] (2) declare the matter of *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 118 (S.D.N.Y.) (the "*Anwar* Action") void *ab initio* as against the various Fairfield Greenwich entities and individuals (collectively, the "Fairfield Defendants"); [2] and (3) to enjoin the preliminary class action settlement (the "Proposed Settlement") reached between Plaintiffs in the *Anwar* Action (the "Anwar Plaintiffs") [3] and the Fairfield Defendants (collectively the "Injunction Defendants"). The Anwar Plaintiffs and the Fairfield Defendants both filed oppositions to the Trustee's Stay Application. (Dkt. Nos. 32 and 33.)

On February 6, 2013, the Court granted the Anwar Plaintiffs' motion to withdraw the bankruptcy reference relating to the Trustee's Stay Application pursuant to 28 U.S.C. § 157(d). Following the withdrawal of the reference, the Trustee and the Securities Investor Corporation ("SIPC") filed reply submissions. (Dkt. Nos. 37 and 38.) The Anwar Plaintiffs filed a supplemental opposition memorandum in response. (Dkt. No. 49.)

The Trustee asserts that a preliminary injunction should be issued enjoining the Proposed Settlement because (1) the Pro-

---

1. The Stay Orders implement the SIPA automatic stay and therefore the Court will not analyze them independently. (*See* Tr.'s Mem. at 21.)

2. The Fairfield Defendants relevant to the *Anwar* Action are: Fairfield Greenwich Limited, Fairfield Greenwich (Bermuda) Limited, Walter M. Noel, Jr., Jeffrey H. Tucker, Andres Piedrahita, Lourdes Barreneche, Robert Blum, Cornelia Boele, Gregory Bowes, Vianney d'Hendecourt, Yanko della Schiava, Harold Greisman, Jacqueline Harary, David Horn, Richard Landsberger, Daniel E. Lipton,

Julia Luongo, Mark McKeefry, Charles Murphy, Corina Noel Piedrahita, Maria Teresa Pulido Mendoza, Santiago Reyes, Andrew Smith, Philip Toub, and Amit Vijayvergiya.

3. The named Plaintiffs in the *Anwar* Action are: Pacific West Health Medical Center Inc. Employees Retirement Trust, Harel Insurance Company Ltd., Martin and Shirley Bach Family Trust, Natalia Hatgis, Securities & Investment Company (SICO) Bahrain, Dawson Bypass Trust, and St. Stephen's School.

posed Settlement violates 11 U.S.C. § 362 and the Stay Orders; (2) to allow for the fair and equitable administration of the BLMIS estate pursuant to 11 U.S.C. § 105(a); and (3) because SIPA preempts the Anwar Plaintiffs' federal and state law claims.

For the reasons stated below, the Court **DENIES** the Trustee's Stay Application in its entirety.

## I. *BACKGROUND*

### A. *THE ANWAR ACTION*

The first constituent case in *Anwar* was filed in December 2008. The Anwar Plaintiffs brought the *Anwar* Action as a class action on behalf of individuals and entities who invested large sums of money in four investment funds (the "Funds") created and operated by the Fairfield Defendants. The overwhelming majority of the Anwar Plaintiffs' money was in turn invested by the Fairfield Defendants in the Ponzi scheme operated by Bernard Madoff ("Madoff") under the auspices of BLMIS, the same scheme for which Madoff was sentenced to 150 years in prison following his guilty plea. *See United States v. Madoff*, No. 09 Cr. 0213 (S.D.N.Y. June 29, 2009).

The Anwar Plaintiffs are suing the Fairfield Defendants in addition to other professional service providers who audited, administered, or served as custodians of the Funds. In the Second Consolidated Amended Complaint (the "SCAC"), filed September 29, 2009, the Anwar Plaintiffs allege violations of federal securities law and common law tort, breach of contract, and quasi-contract causes of action against the Fairfield Defendants and other administrators, custodians and auditors of the Funds. The Anwar Plaintiffs' allegations are detailed more fully in the Court's prior opinions in this action. *Anwar v. Fairfield Greenwich Ltd.*, 728 F.Supp.2d 354

(S.D.N.Y.2010) ("*Anwar I*") and *Anwar v. Fairfield Greenwich Ltd.*, 728 F.Supp.2d 372 (S.D.N.Y.2010) ("*Anwar II*").

Following motions to dismiss the SCAC, the Court held that the Anwar Plaintiffs had standing to pursue individual direct claims for securities fraud, fraud, gross negligence, negligent misrepresentation, breach of fiduciary duty, mutual mistake, third party breach of contract, and unjust enrichment. *See Anwar II*, 728 F.Supp.2d at 401–02. On November 30, 2012, the Court granted preliminary approval to the Proposed Settlement between the Anwar Plaintiffs and the Fairfield Defendants. A final fairness hearing on the Proposed Settlement is scheduled for March 22, 2013.

### B. *THE MADOFF PONZI SCHEME*

The facts and procedural history relevant to the Madoff Ponzi scheme have been set forth numerous times and need not be repeated here. *See, e.g., Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 424 B.R. 122, 125–33 (Bankr.S.D.N.Y.2010). On December 15, 2008, the Court issued the first of the Stay Orders, granting SIPC's application to place BLMIS customers under the protections of SIPA. (*See* Decl. of Jessie Morgan Gabriel in Support of Tr.'s App., dated Nov. 29, 2012, ("Gabriel Decl.") Exs. 8–10.) The Stay Orders essentially reinforce the automatic stay under SIPA and provide, in relevant part, that "all persons and entities are stayed, enjoined and restrained from directly or indirectly . . . interfering with any assets or property owned, controlled or in the possession of [BLMIS]." (Gabriel Decl. Ex. 8 ¶ IV.)

### C. *THE TRUSTEE'S FRAUDULENT CONVEYANCE ACTION*

On July 20, 2010, the Trustee filed the Amended Complaint in *Picard v. Fairfield*

*Sentry Limited,* No. 09–01239 (Bankr. S.D.N.Y. filed May 18, 2009) (the "Trustee's Action") seeking, among other things, the return of certain fraudulent conveyances allegedly transferred from BLMIS to the Fairfield Defendants.

## II. *LEGAL STANDARD*

### A. *PRELIMINARY INJUNCTION*

■ "A party seeking a preliminary injunction ordinarily must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." *Doninger v. Niehoff,* 527 F.3d 41, 47 (2d Cir.2008).

### B. *THE AUTOMATIC STAY*

■ The filing of a petition pursuant to § 5(a)(3) of SIPA operates as an automatic stay of certain actions that arose pre-petition including, as relevant here, actions (1) "against the debtor" or to "recover a claim against the debtor," (2) to "collect, assess, or recover a claim against the debtor," and (3) to "obtain possession of property of the estate." 11 U.S.C. § 362(a). It is well established that the automatic stay generally " 'protects only the debtor, property of the debtor or property of the estate. It does not protect non-debtor parties or their property.' " *Gross Found., Inc. v. Goldner,* 12 Civ. 1496, 2012 WL 6021441, at *7 (E.D.N.Y. Dec. 4, 2012) (*quoting In re Advanced Ribbons & Office Prods., Inc.,* 125 B.R. 259, 263 (9th Cir. BAP 1991)).

### C. *11 U.S.C. § 105(a)*

■ Section 105(a) of the Bankruptcy Code further authorizes a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). "[Section] 105(a) is properly used to enjoin creditors' lawsuits against third parties where 'the injunction plays an important part in the debtor's reorganization plan.' *SEC v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.),* 960 F.2d 285, 293 (2d Cir.1992), or where the action to be enjoined 'will have an immediate adverse economic consequence for the debtor's estate,' *Queenie, Ltd. v. Nygard Int'l,* 321 F.3d 282, 287 (2d Cir.2003)." *Stahl v. Picard (In re Bernard L. Madoff Inv. Sec. LLC),* No. 11–5421, —— Fed. Appx. ——, ——, 2013 WL 616269, at *2 (2d Cir. Feb. 20, 2013). The most common examples of such situations include claims "to establish an obligation of which the debtor is a guarantor, a claim against the debtor's insurer, and actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant." *Queenie,* 321 F.3d at 287 (internal citations and quotation marks omitted). However, § 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law." *Solow v. Kalikow (In re Kalikow),* 602 F.3d 82, 95–96 (2d Cir. 2010) (internal quotation marks omitted).

## III. *ANALYSIS*

### A. *THE PROPOSED SETTLEMENT DOES NOT VIOLATE THE AUTOMATIC STAY OR THE STAY ORDERS*

#### 1. *The Pending Claims in the Anwar Action Are Direct Claims Independent of the Trustee's Claims*

To begin with, the Trustee repeatedly and erroneously claims that the Anwar Plaintiffs' causes of action are derivative of

those of the Trustee. However, the Court has already held that the claims currently pending in the *Anwar* Action are separate and distinct from those possessed by creditors of the BLMIS estate and therefore are not property of the BLMIS estate. *See Anwar II*, 728 F.Supp.2d at 401–02 (finding plaintiffs had standing to bring direct claims and had "suffered individual harm distinct from losses experienced by other investors"). Additionally, the Trustee has successfully argued, and the Bankruptcy Court has explicitly held, that the Anwar Plaintiffs are not direct "customers" of BLMIS and therefore are not creditors of the BLMIS estate that are capable of recovering through the Trustee's Action. *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 454 B.R. 285, 294–95 (Bankr.S.D.N.Y.2011) (limiting the definition of "customers" to parties directly holding an investment account with BLMIS) *aff'd sub nom. Aozora Bank Ltd. v. Securities Inv. Prot. Corp.*, 480 B.R. 117 (S.D.N.Y.2012).

In support of his Stay Application, the Trustee repeatedly cites to cases applying the automatic stay to claims by creditors of the BLMIS estate against third parties. *See, e.g., Picard v. Fox (In re Bernard L. Madoff Inv. Sec. LLC)*, 429 B.R. 423, 433 (Bankr.S.D.N.Y.2010) (hereinafter *"Fox"*) *aff'd sub nom. In re Madoff*, 848 F.Supp.2d 469 (S.D.N.Y.2012); *Picard v. Stahl (In re Bernard L. Madoff Inv. Sec. LLC)*, 443 B.R. 295, 311 (Bankr.S.D.N.Y. 2011) (hereinafter *"Stahl"*) *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 11 Civ. 2392, 2011 WL 7975167 (S.D.N.Y.

Dec. 15, 2011). However, the *Anwar* Action is not such an action. Unlike the plaintiffs in the actions that have been subject to the automatic stay,[4] the Anwar Plaintiffs are not creditors of the BLMIS estate and are not bringing derivative claims that are remotely similar to the fraudulent conveyance action the Trustee has brought against the Fairfield Defendants. The Trustee's bare allegation that the claims in the *Anwar* Action must be derivative of, or inextricably entangled with, the Trustee's Action for fraudulent conveyance is simply not supported by this inapposite case law. *See Fox*, 429 B.R. at 433 (noting that "it is possible for a bankruptcy estate and a creditor to own separate claims against third parties. arising out of the same general conduct.... Here, however, the injuries alleged ... are common to BLMIS and all BLMIS customers."); *Stahl*, 443 B.R. at 311 ("Third Party Plaintiffs are not ... alleging harm caused directly to them by the Madoff Defendants. Rather, the Third Party Actions assert violations of duties owed derivatively to all customers and creditors by virtue of the Madoff Defendants' positions generally at BLMIS, the breach of which resulted in losses to all Madoff victims.").

### 2. *The Settlement Does Not Violate 11 U.S.C. § 562(a)(1)*

Section 362(a)(1) of the Bankruptcy Code provides that the automatic stay applies to any action arising pre-petition "against the debtor ... or to recover a claim against the debtor." 11 U.S.C. § 362(a)(1). As a general rule, indepen-

---

**4.** The Trustee also cites *Picard v. Maxam Absolute Return Fund L.P. (In re Bernard L. Madoff Inv. Sec. LLC)*, 474 B.R. 76, 79 (S.D.N.Y.2012) (hereinafter *"Maxam"*) to support enforcement of the automatic stay. However, *Maxam* involved a fundamentally different situation in which the subject of an avoidance action in the United States sought

a declaration in the Cayman Islands that it was not liable. *Id.* In fact, *Maxam* dealt solely with the extraterritorial application of the automatic stay and all parties agreed that "had [the] lawsuit been filed in the United States, it would have violated the automatic stay." *Id.* at 84. Therefore, *Maxam* has no relevance to the current action.

dent third party claims against non-debtor parties are not subject to the automatic stay. *See, e.g., DeSouza v. PlusFunds Grp., Inc.*, No. 05 Civ. 5990, 2006 WL 2168478, at *2 (S.D.N.Y. Aug. 1, 2006) ("[C]ourts will generally not extend the automatic stay of proceedings pursuant to § 362(a)(1) to non-debtor co-defendants.") (*citing Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65–66 (2d Cir.1986)).

■ Unlike the other Madoff-related actions subject to the automatic stay, the Anwar Plaintiffs have not "violated the stay by usurping causes of action belonging to the [BLMIS] estate" because, as discussed above, the claims in the *Anwar* Action are direct and independent claims against non-debtor parties and thus not claims against a debtor. *Stahl*, 443 B.R. at 311. The Anwar Plaintiffs could not have usurped the claims from the Trustee because the Trustee simply does not have standing to bring the Martin Act fraud and breach of fiduciary duty claims that make up the core of the pending claims in *Anwar*. Therefore, on its face, the *Anwar* Action would not seem to be subject to the automatic stay pursuant to 11 U.S.C. § 362(a)(1).

The Trustee claims that the *Anwar* Action should be subject to the automatic stay because "a third-party action to recover fraudulently transferred property is properly regarded as undertaken 'to recover a claim against the debtor' and subject to the automatic stay pursuant to § 362(a)(1)." *In re Colonial Realty Co.*, 980 F.2d 125, 131–32 (2d Cir.1992).

*In re Colonial* dealt with a unique set of circumstances in which various banks that had provided funding for a number of insolvent real estate limited partnerships failed. The Federal Deposit Insur-

ance Corporation ("FDIC") was appointed receiver for these banks and brought a fraudulent conveyance action seeking to recover funds that had been transferred by a bankrupt general partner of the real estate limited partnerships to various other entities pursuant to the FDIC's statutory authority. The Trustee moved to enforce the automatic stay, which was granted by the Bankruptcy Court. The Second Circuit affirmed the decision, holding that although the property sought by the FDIC's action did not constitute estate property until it was recovered by the Trustee, the automatic stay applied because the FDIC's fraudulent conveyance action was "to recover a claim against the debtor" within the meaning of § 362(a)(1). *Id.* at 132. The Second Circuit's holding was explicitly predicated on the derivative nature of the FDIC's fraudulent conveyance action and the premise that, "[a]bsent a claim against the debtor, there is no independent basis for the action against the transferee." *Id.* (*quoting In re Saunders*, 101 B.R. 303, 305–06 (Bankr.N.D.Fla.1989)). Under a fraudulent conveyance theory, "if [the debtor] were not liable to the FDIC ... the FDIC would have no independent claims against" the transferees. *Id.*

■ The Trustee's reliance on *In re Colonial* and similar cases, however, is misplaced. To begin with, the *Anwar* Action is *not* "a third-party action to recover fraudulently transferred property," but rather an action wholly independent of the BLMIS estate that alleges, among other things, violations by the Fairfield Defendants of the federal securities laws and New York common law premised on alleged duties flowing directly from the Fairfield Defendants to the Anwar Plaintiffs.[5] Therefore, unlike in *In re Colonial*,

---

**5.** While the Trustee may have a fraudulent conveyance action pending against the Fair-

the Anwar Plaintiffs' claims are in no way contingent on the Fairfield Defendants' possible liability to the BLMIS estate. Accordingly, the rationale set forth in *In re Colonial* is inapplicable.[6] Where, as here, "the non-debtor's liability rests upon his own breach of duty, a stay clearly cannot be extended to the non-debtor." *Variable–Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, 945 F.Supp. 603, 608 (S.D.N.Y.1996) (internal quotation marks omitted) [noting that even where the debtor and non-debtors are joint tortfeasors, § 362(a)(1) does not bar claims where "the non-debtor's liability rests upon his own breach of duty".

### 3. The Settlement Does Not Violate 11 U.S.C. § 362(a)(6)

Section 362(a)(6) of the Bankruptcy Code provides that the automatic stay applies to "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6)

■■■ The Trustee further claims that the *Anwar* Action violates the automatic stay because the "damages sought consist of funds wrongly transferred from BLMIS" and therefore the Anwar Plaintiffs seek "to collect or recover a claim against the debtor" in violation of § 362(a)(6). (Tr.'s Mem. at 24.) Essentially, the Trustee argues that, even if the

Anwar Plaintiffs' claims are direct and independent, the fact that BLMIS allegedly fraudulently conveyed funds to the Fairfield Defendants, a portion of which the Trustee claims is being used to fund the Proposed Settlement, converts the otherwise independent nature of the Anwar Plaintiffs' action into "an improper attempt to collect on the Trustee's claims." (*Id.* at 26.) However, the Trustee's tautological attempt to define the nature, and thus rightful ownership, of a particular claim by its detrimental effect on an independent claim against the same party proves too much.

As discussed previously, it is by no means clear that the funds being used in the Proposed Settlement stem, even in part, from transfers from BLMIS to the Fairfield Defendants. Moreover, even assuming these facts, "prepetition transfers . . . do not become 'property of the estate' unless and until they are recovered through a successful avoidance action" and therefore the tangible assets currently held by the Fairfield Defendants are not considered property of the estate prior to such an adjudication. *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec., LLC)*, 440 B.R. 243, 271 (Bankr.S.D.N.Y.2010) (hereinafter *"Merkin"*) (*citing In re Colonial Realty*, 980 F.2d at 131).

The sweeping implications of the Trustee's logic are even more problematic. According to the Trustee's legal theory, the

---

field Defendants, that fact does not transform the nature of the claims at issue in the *Anwar* Action and subsume and extinguish the otherwise independent legal claims of the Anwar Plaintiffs. Indeed, as discussed previously, the Trustee has successfully argued, the class members in the *Anwar* Action are not creditor of BLMIS though they "may well have causes of action for damages against the Feeder Funds," including the Fairfield Defendants. (Decl. of Howard L. Vickery, II in Opp. to Tr.'s App., dated January 25, 2013 ("Vickery Decl."), Ex. B at 3.)

**6.** For the same reason, the Trustee's reliance on *In re Keene Corp.*, 164 B.R. 844 (Bankr. S.D.N.Y.1994) is also misplaced. The *In re Keene* decision was based on the holding in *In re Colonial* that, because plaintiffs' claims were dependent on the third-party transferees being held liable to the debtor, they are claims "to recover a claim against the debtor" and therefore subject to the automatic stay. *In re Keene*, 164 B.R. at 852. As discussed above, that is not the nature of the Anwar Plaintiffs' claims.

mere presence of a limited pool of assets possessed by a target of a bankruptcy estate's adversary proceeding, in and of itself, can convert wholly unrelated and independent claims by non-creditors filed against that non-debtor target into "acts to collect or recover a claim against the debtor" merely because they "prejudic[e] the Trustee's ability to pursue his claims." (Tr.'s Mem. at 25.) Such an expansive interpretation of § 362 would obliterate the requirement that stayed actions bear some relation to the "debtor" and would enable the Trustee to subjugate independent legal claims of parties unrelated to the bankruptcy estate merely because both parties seek recovery from the same limited pool of funds. The Trustee has cited no applicable authority supporting this novel proposition and therefore the Court finds that the Proposed Settlement does not violate 11 U.S.C. § 362(a)(6).

### 4. *The Settlement Does Not Violate 11 U.S.C. § 362(a)(3)*

Section 362(a)(3) of the Bankruptcy Code provides that the automatic stay applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). "Property of the estate" is broadly defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

 The Trustee claims that the Proposed Settlement violates the automatic stay pursuant to § 362(a)(3) because it will inevitably have an adverse impact on the "property of the estate" and that "[b]y settling the Anwar Action, the Representa-

tive Plaintiffs are attempting to exercise control over causes of action that belong to the Trustee, which are property of the estate." (Tr.'s Mem. at 27.) The Trustee further claims that the Proposed Settlement violates the stay because the Anwar Plaintiffs seek to recover from property, the Fairfield Defendants' assets, which the Trustee is independently seeking to recover from in connection with the Trustee's Action for fraudulent conveyance. (*Id.*)

As discussed previously, the Anwar Plaintiffs' claims are wholly independent from the BLMIS estate and therefore would not qualify as "property of the estate" under 11 U.S.C. § 541(a)(1). Whereas the Trustee's Action relates to allegedly fraudulent transfers between BLMIS and the Fairfield Defendants, the *Anwar* Action, which includes Martin Act fraud and breach of fiduciary duty claims, deals with the Fairfield Defendants' alleged misrepresentations to its own direct investors. The Trustee is therefore incorrect in his assertion that the claims in *Anwar* are "based on substantially the same operative facts" as the Trustee's action. (*Id.* at 27.) Because the Trustee could not raise Anwar Plaintiffs' causes of action, they are not property of the BLMIS estate.

As stated above, the Trustee has also not established that the Proposed Settlement seeks to recover from property belonging to the BLMIS estate. *See In re Colonial Realty*, 980 F.2d at 131. The Trustee cannot simply convert assets held by the Fairfield Defendants into estate property by repeating the mantra that they are estate property, but instead must have such an entitlement adjudicated before it has any precedential force.[7] *See id.*

7. For substantially the same reasons, the Trustee's assertion that federal law preempts the Anwar Plaintiffs state law claims because "[t]he Settlement . . . den[ies] the Trustee possession of property that federal law entitles

him to recover" is also misplaced. (Tr.'s Reply at 16.) The Fairfield Defendants are entities independent of the BLMIS estate and there has been no adjudication that even a fraction of the assets used to fund the pro-

Furthermore, the Fairfield Defendants' assets derive from multiple sources, many of which could not serve as the basis of a fraudulent conveyance claim by the Trustee. The Fairfield Defendants submit that most of the funds for the Proposed Settlement are derived from subscription money paid by customers directly to the Funds, fees generated from management of non-Madoff funds, and earnings from prior employment. (*See* Decl. of Mark McKeefry in Opposition, dated January 25, 2013 ("McKeefry Decl."), ¶¶ 2–4.) The Fairfield Defendants represent that less than 30 percent of the fees paid to the Fairfield Defendants can be associated with distributions from BLMIS. (*Id.* at ¶ 4.) This is in marked contrast to the circumstances in other relevant stayed Madoff actions where the majority, if not nearly all, of the funds were directly attributable to BLMIS distributions. *See, e.g., Stahl,* 443 B.R. at 316 ("[N]one of the Madoff Defendants has any apparent income other than that derived from BLMIS and related entities.")

In fact, the Anwar Plaintiffs submit that the class of settling plaintiffs in the *Anwar* Action, not BLMIS, were effectively responsible for paying the Fairfield Defendants' fees because they transferred approximately $1.33 billion more to the Fairfield Defendants than was ever returned to them by BLMIS. (Pls.' Opp. at 3.) In any event, to the extent a portion of the Fairfield Defendants' assets may be deemed a result of an improper fraudulent conveyance in the future, the Proposed Settlement explicitly sets aside $30 million in escrow that can be used to pay future settlements or judgments by the Fairfield Defendants with the Trustee. (*See* Gabriel Decl. ¶¶ 3, 5.)

If anything, the Trustee's explicit consent permitting the plaintiffs in *Stahl,* who, unlike the Anwar Plaintiffs, were BLMIS creditors, to proceed with claims against two of the individual Fairfield Defendants following the enforcement of the stay against the Madoff Defendants counsels in favor of the opposite conclusion than that advocated by the Trustee: the direct claims of the non-BLMIS creditor Anwar Plaintiffs against the non-debtor Fairfield Defendants are not derivative of the Trustee's claims and therefore not property of the BLMIS estate. (*See* Vickery Decl. Ex. C pp. 14–34.)

Therefore, the *Anwar* Action is not subject to the automatic stay pursuant to 11 U.S.C. § 362(a) and the Trustee is not entitled to a preliminary injunction.

B. *THE TRUSTEE IS ALSO NOT ENTITLED TO A PRELIMINARY INJUNCTION PURSUANT TO 11 U.S.C. § 105(a)*

1. *The Trustee Has Not Established That the Proposed Settlement Will Have Immediate Adverse Economic Consequences*

■ The Trustee claims that the Proposed Settlement will have an immediate adverse impact on the property of the estate and therefore violates the automatic stay. Specifically, the Trustee claims that the Anwar Plaintiffs are "attempting to exercise control over causes of actions that . . . are property of the estate" and "seek to recover from property that was improperly transferred" from BLMIS to the Fairfield Defendants. (Tr.'s Mem. at 27.)

For many of the same reasons previously set forth, the Trustee has also not established that the Anwar Plaintiffs' claims

posed settlement are "property of the estate" that the Trustee is entitled to recover. Therefore, even under the interpretation most bene-

ficial to the Trustee, there is no clash between state and federal law in the matter now before the Court.

against the non-debtor Fairfield Defendants will have an immediate adverse economic consequence on the debtor BLMIS estate. While the Proposed Settlement may have an adverse impact on the Fairfield Defendants—the third-party estate—there is no direct economic effect on any current property of the debtor BLMIS estate. Any assets in the possession of the Fairfield Defendants that the Trustee's Action seeks to obtain are not " 'property of the estate' unless and until they are recovered through a successful avoidance action...." *Merkin,* 440 B.R. at 271.

Unlike *Stahl,* in which "all assets held by the Madoff Defendants [were] related to BLMIS customer property," the Fairfield Defendants' assets are derived from multiple sources other than BLMIS. Furthermore, in marked contrast to the stayed Madoff actions cited by the Trustee, the claims in the *Anwar* Action are not brought by BLMIS customers, are not derivative of or identical to the action brought by the Trustee, and do not involve members of the Madoff family employed by BLMIS. *See, e.g., Fox v. Picard (In re Madoff),* 848 F.Supp.2d 469, 480 (S.D.N.Y. 2012) (staying action by direct BLMIS investors "to recover for an injury that was inflicted not by specific acts of the Picower defendants directed toward the [plaintiffs] themselves, and not by violating a duty owed directly to the [plaintiffs], but by a single set of actions that harmed BLMIS and all BLMIS *customers* in the same way and for the same reason") (emphasis added); *Stahl,* 443 B.R. at 316 ("[D]efendants targeted by the Third Party Actions are close Madoff family members, key BLMIS employees, and thus central to the Trustee's investigation").

Notwithstanding the Trustee's creative wordsmithery, the Anwar Plaintiffs are not BLMIS creditors and therefore concerns relating to the "equitable distribution of customer property under SIPA" or a "race to the courthouse to recover preferentially to the detriment of other stakeholders" are simply off point.[8] (Tr.'s Mem. at 30.) If the Anwar Plaintiffs are not creditor-customers of the BLMIS estate, and therefore not entitled to proceeds from the estate, then their independent and direct claims against a non-debtor party cannot be subjugated for the benefit of the debtor estate. Under similar circumstances, other courts have also declined to issue injunctions pursuant to § 105. *See, e.g., In re Granite Partners, L.P.,* 194 B.R. 318, 338 (Bankr.S.D.N.Y.1996) (refusing to enjoin direct claims by shareholders where trustee stated "in conclusory terms, that the estates will suffer irreparable injury because the third party lawsuits will deplete estate assets, [and] potentially prejudice subsequent lawsuits"); *In re Enivid, Inc.,* 364 B.R. 139, 157 (Bankr.D.Mass. 2007) (denying motion to enjoin non-creditor shareholder lawsuit against "the same target defendants and involv[ing] some of the same conduct" as the trustee's action because the shareholders stated different claims for relief based on different theories of liability and were not derivative of the trustee's claims); *In re Reliance Acceptance Grp., Inc.,* 235 B.R. 548, 560 (D.Del. 1999) (reversing injunction even though

---

**8.** The Trustee selectively quotes *Fox* and *Fisher v. Apostolou,* 155 F.3d 876, 881 (7th Cir. 1998), for the proposition that, "even if the claims asserted are not the property of the estate" because "the overlap between the claims asserted in the Trustee's Action and the Anwar Action are 'so closely related that allowing the allowing the Injunction Defen-

dants to convert the bankruptcy proceedings into a race to the courthouse would derail the bankruptcy proceedings.' " (Tr.'s Hem. at 32.) Not only are the two actions not closely related, but unlike the *Anwar* Action, both *Fox* and *Fisher* involved *"creditors* with claims so closely related," *not* non-creditor parties like the Anwar Plaintiffs. *Fisher,* 155 F.3d at 881.

lawsuit might reduce assets available to trustee because "Shareholders are not bringing litigation as creditors and their damages, if any, will not be reduced by amounts they would receive for claims filed in the bankruptcy case"). As in *In re Reliance,* the fundamental issue is the Trustee's

> difficulty . . . in identifying a right to the relief; that is, [the Trustee] ha[s] been unable to identify a legal principle that stands for the proposition that the Estate's claims for relief should take precedence over the [Anwar Plaintiffs'] claims. Absent a right to relief, [the Trustee] ha[s] no right to an injunction.

*In re Reliance,* 235 B.R. at 561. While enjoining the *Anwar* Action might in effect provide additional funds to the Trustee, the Court will not, for that reason alone, deprive the non-creditor Anwar Plaintiffs of their independent and direct right to assert claims against a non-debtor third party.[9] Section 105 "does not authorize . . . courts to create substantive rights that are otherwise unavailable under applicable law" and therefore cannot be used to provide the Trustee effective priority over independent and direct claims against non-debtors merely because both actions seek to recover from the same pool of funds. *In re Kalikow,* 602 F.3d at 96 (2nd Cir. 2010).

### 2. *The Trustee Does Not Satisfy the Requirements for a Preliminary Injunction Under 11 U.S.C. § 105(a)*

The Trustee cites authority for the proposition that an injunction issued pursuant to § 105(a) need not adhere to the require-

ments of Federal Rule of Civil Procedure 65 because such injunctions are authorized by statute. *See Fox,* 429 B.R. at 436 ("Because injunctions under section 105(a) are authorized by statute, they need not comply with traditional requirements of Rule 65."). Specifically, the Trustee claims that "a debtor need not prove irreparable injury if the requested injunction is necessary in order to preserve the jurisdiction of the Bankruptcy Court, especially if the automatic stay is at issue." *In re Probulk Inc.,* 407 B.R. 56, 63 (Bankr. S.D.N.Y.2009).

The Court finds that the Trustee has not made the required showing of a likelihood of success on the merits and therefore is not entitled to a preliminary injunction, regardless of whether the Trustee is required to prove irreparable harm under these circumstances. As discussed previously, the Trustee's motion to enjoin the *Anwar* Action is not likely to succeed on the merits because the non-creditor Anwar Plaintiffs' claims against the non-debtor Fairfield Defendants are direct in nature, not property of the bankruptcy estate, and will not thwart the Trustee's administration of the BLMIS estate.

### C. *SIPA DOES NOT PREEMPT THE ANWAR PLAINTIFFS' CLAIMS*

■ Raised for the first time in his reply submission, the Trustee advocates the sweeping principle that an injunction is required under the current circumstances because SIPA preempts and displaces the Anwar Plaintiffs' state and federal law claims to the extent they conflict with

---

9. The Court notes that any effect on the BLMIS estate of denying the Trustee's Stay Application pales in comparison to the complete deprivation of recovery the Anwar Plaintiffs might suffer. *See* Fairfield Defendant's Opp. at 8 ("[T]he $50.25 million at issue is less than 1% of the $9.2 billion the Trustee reports he already has gathered for the BLMIS estate.") (*citing* Tr.'s Eighth Interim Report, *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff),* Adv. Pro. No. 08–1789 (Bankr.S.D.N.Y. Sept. 30, 2012), ECF No. 5066).

SIPA and "prove an obstacle" to the Trustee's ability to return funds to BLMIS customers. (Tr.'s Reply at 10–17.) Specifically, the Trustee argues that the claims in the *Anwar* Action conflict with SIPA because the Proposed Settlement "would dissipate customer funds transferred to the [Fairfield] Defendants, depleting their assets so they could not satisfy the Trustee's federal claims." (*Id.* at 16.) The Trustee further argues that, by depleting the limited pool of the Fairfield Defendants' assets, the Proposed Settlement "clashes with [the Trustee's] federal obligations, relying on state law to deny the Trustee possession of property that federal law entitles him to recover." (*Id.*) Finally, the Trustee argues that the Anwar Plaintiffs' federal securities fraud claims may not be permitted to "threaten[ ] application of . . . . SIPA [ ] the more recent, more specific, and more comprehensive statute." (*Id.* at 18.)

Contrary to the Trustee's assertions, the Anwar Plaintiffs—non-creditors of the BLMIS estate that are ineligible for relief from the BLMIS estate's claims—are not leapfrogging the BLMIS creditors through subterfuge. Instead, as direct investors in the Funds with no direct relationship to BLMIS or the Trustee, the Anwar Plaintiffs are merely seeking recovery for the alleged wrongs committed by a non-debtor party through the only legal avenues available. The Trustee's claim that BLMIS customers should get the first bite at the Fairfield Defendants' assets because "Congress gave 'customers' higher priority than other potential claimants" distorts the underlying issue: the Anwar Plaintiffs are not claimants, creditors, or customers of the BLMIS estate, but rather independent plaintiffs bringing direct federal and state causes of action against a non-debtor third party alleging claims that the Trustee cannot bring. (*Id.* at 18–19.) The Anwar Plaintiffs are not cutting the Trustee's (or

SIPA's) lunch line, they are dining in a different cafeteria altogether.

The Trustee cites no persuasive evidence that Congress, through SIPA, intended to displace the federal and state law causes of action at issue in the *Anwar* Action. The relief sought by the Trustee would not only prevent investors in the Funds from receiving a recovery for the alleged harms, but also, by voiding the *Anwar* Action *ab initio*, it would effectively deprive them, as non-BLMIS customers, of any forum in which to assert their claims and permanently subordinate their interests to those of the direct investors in BLMIS. Allowing the Trustee to unilaterally extinguish independent legal causes of actions possessed by individuals unrelated to the bankruptcy proceeding would grant unprecedented power to a bankruptcy trustee. The Trustee's legal claims undoubtedly, and justifiably, trump those of other creditors of BLMIS by reason of the Trustee's obligation to equitably administer the bankruptcy estate. However, Congress did not intend, and the Court will not permit, the Trustee to employ his authority under SIPA to subjugate independent legal claims bearing no direct relation to the administration of the bankruptcy estate itself. For these reasons, the Court finds that SIPA does not preempt the federal and state law claims at issue in the *Anwar* Action.

### D. *THE TRUSTEE'S STAY APPLICATION IS ALSO BARRED BY EQUITABLE DEFENSES*

The Injunction Defendants claim that the Trustee's Stay Application is barred by the equitable defenses of laches, waiver, and estoppel. The Trustee counters that the Trustee expressly reserved his right to seek an injunction, and that the Injunction Defendants failed to "give any notice to the Trustee that they intended to pursue a

separate settlement" while all the parties involved worked towards a global settlement of claims against the Fairfield Defendants. (Tr.'s Reply at 29–30.)

 A laches defense under federal law is established by showing (1) unreasonable delay by the claimant in bringing suit, and (2) prejudice resulting from that delay. *Perez v. Danbury Hosp.*, 347 F.3d 419, 426 (2d Cir.2003). Waiver is the "intentional relinquishment of a known right," while forfeiture is "the failure to make the timely assertion of a right." *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir.1999) (internal quotation marks omitted). Equitable estoppel applies when "the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 725 (2d Cir.2001).

 The Trustee's Stay Application is a textbook example of unreasonable delay and therefore would be independently barred as untimely under the equitable doctrine of laches. Despite having full knowledge of the details of the *Anwar* Action, the Trustee waited on the sidelines for nearly four years prior to seeking to declare the *Anwar* Action void *ab initio*, watching while the parties expended significant resources litigating the *Anwar* Action and attempting to seek an equitable resolution, including the filing of more than 1,000 docket entries in the case.[10] During this time period, the Trustee filed numerous applications to stay other proceedings, but not the *Anwar* Action. If the Trustee believed the assets of the Fairfield Defendants to be property of the BLMIS estate, he should have sought relief long ago rather than delaying more than four years only to file the Stay Application on the eve of settlement, resulting in enormous prejudice to the Injunction Defendants. The Trustee provides no reasonable justification for his delay and therefore is barred by laches from bringing the Stay Application.

## IV. *ORDER*

· For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 40, Ex. C) of Irving H. Picard, as trustee for the substantively consolidated liquidation of the estate of Bernard L. Madoff Investment Securities LLC under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa et seq., and the estate of Bernard L. Madoff, individually, seeking an Application for Enforcement of Automatic Stay and Issuance of Preliminary Injunction is **DENIED**.

**SO ORDERED.**

10. The Trustee argues that he has not delayed in asserting his rights in this action by claiming the Trustee was working towards a global settlement with the Fairfield Defendants and citing to a clause in a separate settlement agreement in which the Trustee reserved his right to seek injunctive relief in the future. (Tr.'s Reply at 29.) However, whatever tactical maneuvers the Trustee may have been making behind closed doors, none of these issues were brought before the Court in this action and do not excuse such an excessive delay in raising the issue before the Court.